# EXHIBIT #1

## AFFIDAVIT

STATE OF ILLINOIS :

: Case No. 12-cv-06007

CITY OF CHICAGO :

I, Robert A. Fajardo, make the following statement freely and voluntarily. I understand that this statement may be used in evidence:

1. I am a psychiatrist with 45 years of experiencing counseling patients. I am well recognized in my field, and I am a faculty member of the Institute of Psychoanalysis in Chicago, Illinois.

2. Larry Boss, the Plaintiff in this case, has been a patient of mine for more than five years.

3. Mr. Boss came to me, because he was experiencing unusual stress with respect to workplace assignments. At the time that he first came to me, I understand that he was in the middle of an EEO case.

4. Although I have not been retained as an expert in this case, I have been in a position to notice the deterioration of Mr. Boss' mental and physical health, as a result of harassment that I believe that he has suffered in the workplace.

5. Many of my patients have stresses created by workplace problems, but Mr. Boss appears to have been subjected to unusual harassment.

6. He has described demeaning emails and comments by his then supervisor, Eleny Ladias.

1

7. The pain that he has experienced seems to be beyond that of most everyday, workplace situations.

8. In other respects, Mr. Boss, from my observation, is a careful, disciplined person, who does not suffer from mental illness.

9. As a result, I can, as a factual observer, attribute the unusual stresses that he has related to me, and that he has demonstrated in our sessions, to harassment in the workplace.

10. Mr. Boss' condition demonstrated that he felt extremely stressed at work, but he was upbeat, in that he had recently won his EEO case. *R.a.7.*

11. Shortly thereafter, however, it became clear that Mr. Boss' condition, rather than improving, worsened. *R.a.7.*

12. He related to me that his new supervisor, Elmore Richardson, appeared to be taking direct orders from Ms. Ladias.

13. Mr. Boss also related to me that Mr. Richardson seemed to increase his workload, apparently in planning and consultation with Ms. Ladias.

14. Although Mr. Boss explained to Mr. Richardson that he was experiencing severe stress from this workload, it would appear that Mr. Richardson increased Mr. Boss' workload. *THERE WAS AN ATTEMPT TO IMPOSE WORK REQUIREMENTS BEYOND HIS KNOWLEDGE OR EXPERTISE. R.a.7.*

15. Not only did Mr. Boss complain to me that his workload had increased. I could see the severe deterioration in his condition.

16. Mr. Boss also related to me that, apparently in retaliation for Mr. Boss' EEO activity, his managers were attempting to set him up as a fall guy, and attempting to force him to falsify information on documents.

*R.a.7.*

2

17. Mr. Boss, understandably, refused to falsify documents, and actually made corrections.

18. This, in turn, as Mr. Boss, related, only made his managers more hostile than they had been before, because he refused to collaborate in their plans to set him up, in efforts in which they concomitantly appeared to be covering up for themselves.

19. Mr. Boss suffered from this harassment physically as well as emotionally.

20. As a physician, I could sense that his health had declined.

21. Moreover, Mr. Boss, while in the midst of this discrimination and retaliation by his management, *may have* suffered a stroke. *Certainly had syncopal episodes, RAJ. And he became increasingly fearful of suffering a stroke 2° TV stress*

22. I was not surprised, given the unusual harassment to which Mr. Boss' managers appeared to be subjecting him.

23. In view of his declining health—which appears to have exacerbated, if not caused, by his managers' harassment and retaliation—Mr. Boss' physicians recommended that he not return to work.

24. I concur with this decision. Mr. Boss' health had suffered irreparably from, it would seem, his managers' harassment and retaliation.

25. I could sense, and discern, the stress that Mr. Boss felt, each time that he described the harassment that he suffered.

26. Mr. Boss also related to me both the content of degrading emails, which he received from Ms. Ladias, and the dishonest efforts of his supervisors to falsify records, and to implicate him.

3

27. As a psychiatrist who has seen many patients, over the course of 45 years—many of whom have suffered stresses in the workplace—Mr. Boss' stresses seem unusual.

28. When he has related these issues, I have discerned the stress in his face, his tones, and his movements.

29. From my observations of Mr. Boss, during the course of my treatment of him, I believe that his managers were harassing him, and retaliating against him.

30. I was also noticed for a deposition in this case, and was prepared to testify.

31. I understand that the Defendant's attorney cancelled the deposition.

32. I was not bothered by this, and understand that such cancellations are common in the practice of law.

33. I was also compensated for my time.

34. My comments are based upon my treatment of Mr. Boss, and observations during said treatment, over the course of more than three years.

35. I have no interest in this case other than of a physician who is concerned about his patient's well being.

I have read the forgoing Affidavit consisting of four (4) page(s), and I hereby attest under penalty of perjury that it is true and correct to the best of my knowledge and belief. I have signed or initialed each page. I have been given the opportunity to make any corrections and/or additions, which I have submitted.

_Robert A. Fajardo, M.D._  10/22/13

ROBERT A. FAJARDO          Date

4